UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street, N.W., Suite 8000<br>Washington, DC 20530<br><br>    *Plaintiff*,<br><br>v.<br><br>ZEN-NOH GRAIN CORP.<br>1127 Highway 190,<br>East Service Road<br>Covington, LA 70433<br><br>and<br><br>BUNGE NORTH AMERICA, INC.,<br>1391 Timberland Manor Parkway<br>Chesterfield, MO 63017<br><br>    *Defendants*. | Civil Action No.: |

# COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to prevent Zen-Noh Grain Corp. from acquiring assets of Bunge North America, Inc. The United States alleges as follows:

## I. INTRODUCTION

1. American farmers produce the crops that feed our nation and the world. The United States' primary crops are corn and soybeans (collectively referred to here as "grain"). American farmers produced 14.2 billion bushels of corn and 4.14 billion bushels of soybeans in 2020, and roughly one-quarter of these grains were exported. In the United States, grain may

1

flow from the farm directly to end users like ethanol plants and feed mills, or farmers can sell their grain to local grain elevators, where it is stored and aggregated, and later transported by train or barge to more distant domestic end users or to port elevators for export. To earn a fair return on their hard work and investments, farmers rely on vigorous competition between the companies that purchase their grain for direct use or further resale.

2. Zen-Noh Grain Corp. ("ZGC") seeks to acquire 35 operating and 13 idled U.S. grain elevators from Bunge North America, Inc. ("Bunge"). These elevators are located in nine states, mainly along the Mississippi River and its tributaries. ZGC and Bunge are both grain traders and exporters, each purchasing millions of tons of corn and soybeans annually from farmers located across the United States' agricultural regions, and through their networks distributing the grain to customers throughout the United States and the rest of the world.

3. Today, ZGC, along with its affiliate CGB Enterprises, Inc. ("CGB"), a 50-50 joint venture between ZGC and Itochu Corporation, competes against Bunge to purchase corn and soybeans at numerous U.S. grain elevators and at their port elevators. In particular, in some areas along the Mississippi and Ohio Rivers where the Defendants operate competing river elevators, farmers have few – if any – alternative purchasers for their grain. The acquisition will eliminate competition between ZGC and Bunge in those locations; as a result, many U.S. farmers are likely to receive lower prices and poorer quality service when seeking to sell their grain.

4. In nine geographic areas, a Bunge elevator and a nearby ZGC or CGB elevator represent two of only a small number of alternatives where area farmers can sell their grain. In those nine areas, ZGC and Bunge currently compete aggressively to win farmers' business by offering better prices and more attractive amenities such faster grain drop-off services and better grain grading. Faster drop-off services mean farmers can get back to their fields more quickly

and make better use of their trucks and employees, ultimately saving time and money. If one elevator is grading grain more harshly or inconsistently, which may lead to a lower price paid to a farmer for the grain, the farmer has the option of selling to a competing elevator which may grade differently.

5. If the proposed transaction proceeds in its current form, farmers located in these areas are likely to receive lower prices and lower quality services, and have fewer choices for the sale of their crops. The proposed transaction therefore is likely to lessen competition substantially in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and the Court should enjoin this unlawful transaction.

## II.   JURISDICTION AND VENUE

6. The United States brings this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

7. Defendants are engaged in, and their activities substantially affect, interstate commerce. ZGC and Bunge both purchase, store, and sell grain throughout the United States. The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

8. ZGC and Bunge have each consented to personal jurisdiction and venue in this jurisdiction for purposes of this action. Venue is proper under 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c).

**III.    DEFENDANTS AND THE PROPOSED TRANSACTION**

9. This case arises from ZGC's proposed acquisition of certain grain elevator assets from Bunge for approximately $300 million pursuant to an Asset Purchase Agreement entered on April 21, 2020.

10. ZGC, headquartered in Covington, Louisiana, is a subsidiary of the National Federation of Agricultural Cooperative Associations of Japan. ZGC owns and operates a state-of-the-art export elevator located on the Mississippi River near Convent, Louisiana, from which it trades and exports corn, soybeans, sorghum, wheat, and grain by-products. Recently expanded in 2018 to handle up to 17 million tons of grain annually, ZGC's Convent elevator is the largest port elevator on the Mississippi. ZGC does not own any inland grain elevators and relies upon its affiliate, CGB, to supply the majority of the massive quantities of corn and soybeans ZGC exports annually from Convent. Post-acquisition, ZGC intends to lease the Bunge elevators to CGB to operate through CGB's wholly owned subsidiary, Consolidated Grain and Barge Co.

11. CGB is a 50-50 joint venture between ZGC and Itochu Corporation, a global trading company. CGB operates more than 100 elevators, many of which are located along the Mississippi, Ohio, Arkansas, and Illinois Rivers. CGB is the fifth-largest grain company in the United States by storage capacity. CGB's grain merchandizers are in daily contact with thousands of farmers, actively seeking to purchase grain from them. Currently, CGB sells approximately 60% of the grain it purchases to ZGC.

12. Bunge, headquartered in Chesterfield, Missouri, is the North American subsidiary of Bunge Limited. Bunge is a large agribusiness and food ingredient company that owns and operates grain elevators, oilseed processing plants, and edible oil refineries, as well as grain export terminals. Bunge is the eighth-largest grain company in the United States by storage

capacity. Post-acquisition, Bunge will continue purchase grain in the United States via its export elevator on the Mississippi River in Destrehan, Louisiana and its export terminal in Longview, Washington (a joint venture with Itochu Corporation). In addition to the export terminals, Bunge will retain ownership interests in eight elevators in Illinois and Indiana.

## IV.    THE RELEVANT MARKETS

13.     The livelihood of farmers depends on their ability to sell the corn and soybeans they grow to purchasers who offer them the best price, net of transportation and other selling costs that farmers incur. Ethanol plants and feed and crush mills purchase grain and process it into usable products such as soymeal or fuel. Rail and river elevators also purchase grain and store it until it is sold and transported to end users, in either domestic or export markets.

14.     For convenience, some farmers may sell their grain to smaller, "country" elevators, located in closer proximity to the farmer than end users or rail and river elevators. Such elevators serve as grain collection and buying points in rural communities, and may provide other services like grain storage, drying, and conditioning services. Upon aggregating sufficient quantities of grain, or when market prices are most attractive, country elevators ultimately resell the grain to end users or to the larger rail or river elevators that can transport the grain to end users or export elevators.

15.     More than 45% of the grain exported from the U.S. is shipped out from port elevator export terminals located at the mouth of the Mississippi River near the Gulf of Mexico. The vast majority of this grain is sourced from river elevators located along the Mississippi and its tributaries. These river elevators, found as far north as Minnesota, purchase grain from surrounding farms, and load it onto barges for transport to the port elevators.

### A.     Relevant Product Markets

16.     ZGC (mainly through CGB) and Bunge own grain elevators, primarily located at rail terminals and along navigable rivers. They compete with other grain purchasers, including ethanol processors, feed mills, and crush processors, to purchase corn and soybeans from U.S. farmers, brokers and country elevators. Corn and soybeans are each distinct products without reasonable substitutes, differing from other agricultural commodities and one another in their physical characteristics, means of production, uses, and pricing. Because of the length of growing seasons, and the suitability of corn and soybeans to certain climates and regions, farmers of these crops would not switch to production of other agricultural commodities in sufficient numbers to render unprofitable a small but significant decrease in price by a hypothetical monopsonist of that crop. The purchase of corn and the purchase of soybeans for end use or for sale to the export market each constitute a relevant product market and line of commerce under Section 7 of the Clayton Act, 15 U.S.C. § 18.

### B.     Relevant Geographic Market

17.     Farmers typically haul grain by truck to nearby elevators or end users. Transportation costs increase significantly with every mile the farmers must transport the grain to reach a purchaser, reducing the farmers' profits. Transporting grain also consumes farmers' time. For these reasons, a small change in price would not likely cause farmers to significantly expand the distance they are willing to drive to sell their grain. The distance a farmer is willing to drive is determined in large part by the second-closest potential purchaser, which is the best competitive threat to the purchaser closest to the farmer.

18.     Rail or river elevators and other grain purchasing facilities, such as grain crush plants and ethanol plants, typically purchase grain from within the facility's draw area. "Draw

area" is an industry term that describes the locations of farms from which the facility expects to acquire most of its grain. Each elevator or end user has a unique draw area due to characteristics such as surrounding road conditions, crop output, local topography, and proximity of competing purchasers. The draw area of a grain purchasing facility is determined by transportation time and costs and so is usually very localized.

19. The draw area of one grain facility frequently will overlap with that of another, resulting in competition between the facilities to purchase grain from farmers. Some farming areas of the country may be located such that they fall within the overlapping draw areas of only a few competing grain purchasing facilities. In particular, in the following areas where the Defendants' river elevators have overlapping draw areas, there are only a small number of grain purchasers competing to purchase farmers' corn and soybeans:

    (a) The overlapping draw areas of elevators in the vicinity of McGregor, Iowa;

    (b) The overlapping draw areas of elevators in the vicinity of Albany/Fulton, Illinois;

    (c) The overlapping draw areas of elevators in the vicinity of Shawneetown, Illinois;

    (d) The overlapping draw areas of elevators in the vicinity of Caruthersville, Missouri;

    (e) The overlapping draw areas of elevators in the vicinity of Huffman, Arkansas;

    (f) The overlapping draw areas of elevators in the vicinity of Osceola, Arkansas;

    (g) The overlapping draws areas of elevators in the vicinity of Helena, Arkansas;

    (h) The overlapping draw areas of elevators in the vicinity of Lake Providence, Louisiana; and

(i) The overlapping draw areas of elevators in the vicinity of Lettsworth, Louisiana.

20. These geographic areas satisfy the hypothetical monopsonist test (a "monopsonist" is a buyer that controls the purchases in a given market), the buyer-side counterpart to the hypothetical monopolist test. A hypothetical monopsonist of the purchase of corn or soybeans in each of these areas would impose at least a small but significant and non-transitory decrease in the price paid to farmers. Such a price decrease for these products would not be defeated by farmers selling to purchasers outside their local area due to the added costs of transportation. As farmers in these areas have already determined the best use of their farmland, a price decrease would also not be defeated by farmers' switching to growing alternative crops. Farmers currently growing corn or soybeans are unlikely convert to production of other agricultural commodities in sufficient numbers to prevent a small but significant decrease in price. Nor could area farmers thwart a post-transaction price decrease by selling instead to local country elevators. Country elevators simply resell grain to river and rail elevators or to other end users; if Defendants lower prices post-transaction, country elevators would be forced to lower their own price to farmers to maintain profitability. Consequently, country elevators cannot mitigate a price decrease resulting from this transaction. Therefore, each of the overlapping draw areas above constitute a relevant geographic market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18, for the purposes of analyzing this transaction.

## V.    ZGC'S ACQUISITION OF CERTAIN GRAIN ELEVATORS FROM BUNGE IS LIKELY TO RESULT IN ANTICOMPETIVE EFFECTS

21. In each of the nine relevant geographic markets, ZGC (and its affiliate CGB) and Bunge are two of a very small number of grain purchasers competing to buy corn and soybeans; in two of these markets, CGB and Bunge are the only elevators available to area farmers.

Famers located within these geographic areas depend on this competition to obtain a competitive price for their grain. ZGC's acquisition of Bunge's elevators will substantially lessen competition for the purchase of corn and soybeans in these markets, enabling it to unilaterally depress prices paid to farmers for their crops.

22. Because there are few alternative grain purchasers within these geographic areas, purchases of grain are highly concentrated, with the Defendants accounting for a majority of corn and/or soybean purchases in a given year. For example, in 2019, the Defendants purchased upwards of 95% of the total corn and soybean output of farmers in Pemiscot County, Missouri; Pemiscot County falls within the draw area of Bunge's Caruthersville, Missouri river elevator, and the draw areas of CGB's Caruthersville and Cottonwood, Missouri river elevators.

23. By eliminating head-to-head competition between ZGC (and its affiliate CGB) and Bunge for grain purchases in these geographic markets, the proposed acquisition would result in lower prices paid to farmers, lower quality of services offered to farmers at the grain origination elevators, and reduced choice of outlets for farmers to sell their grain. The proposed transaction would substantially lessen competition and harm the many farmers selling their crops to river elevators along the Mississippi River and its tributaries.

VI. **ABSENCE OF COUNTERVAILING FACTORS**

24. New entry and expansion by competitors likely will not be timely and sufficient in scope to prevent the acquisition's likely anticompetitive effects. New elevators are unlikely to be constructed in these geographic markets because of the high cost of construction and the difficulty of finding appropriate locations to build such a facility along the Mississippi or its tributaries. Even assuming such a location could be found and regulatory and permitting requirements could be fulfilled, constructing a river elevator would take approximately two years to complete.

9

25. The proposed acquisition is unlikely to generate verifiable, merger-specific efficiencies sufficient to reverse or outweigh the anticompetitive effects likely to occur.

## VII. VIOLATION ALLEGED

26. The United States hereby incorporates the allegations of paragraphs 1 through 26 above as if set forth fully herein.

27. ZGC's proposed acquisition of the Bunge elevators is likely to substantially lessen competition in the relevant markets, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

28. Unless enjoined, the proposed acquisition would likely have the following anticompetitive effects, among others:

    (a) eliminate present and future competition between ZGC (and affiliate CGB) and Bunge in the each of the relevant geographic markets for the purchase of corn and the purchase of soybeans;

    (b) cause prices paid to farmers for corn and soybeans to be lower than they would be otherwise; and

    (c) reduce quality, service, and choice for American farmers.

## VIII. REQUEST FOR RELIEF

29. The United States requests that the Court:

    (a) adjudge ZGC's acquisition of Bunge's elevators to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

    (b) permanently enjoin Defendants from consummating ZGC's proposed acquisition of Bunge's elevators or from entering into or carrying out any

        other agreement, understanding, or plan by which the assets or businesses of ZGC and Bunge would be combined;

(c)      award the United States its costs of this action; and

(d)      grant the United States such other relief the Court deems just and proper.

Dated: June 1, 2021

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES:**

| | |
|---|---|
| /s/ Richard A. Powers | /s/ Jill Ptacek |
| RICHARD A. POWERS | JILL PTACEK* |
| Acting Assistant Attorney General for Antitrust | MICHELE B. CANO |
| | JESSICA BUTLER-ARKOW (D.C. #43022) |
| /s/ Kathleen S. O'Neill | Attorneys for the United States |
| KATHLEEN S. O'NEILL | |
| Senior Director of Investigations & Litigation | U.S. Department of Justice |
| | Antitrust Division |
| /s/ Robert A. Lepore | 450 Fifth Street, NW, Suite 8000 |
| ROBERT A. LEPORE | Washington, DC 20530 |
| Chief | Tel: (202) 307-6607 |
| Transportation, Energy & Agriculture Section | Fax: (202) 616-2441 |
| | Email: jill.ptacek@usdoj.gov |
| /s/ Katherine A. Celeste | |
| KATHERINE A. CELESTE | *LEAD ATTORNEY TO BE NOTICED |
| Assistant Chief | |
| Transportation, Energy & Agriculture Section | |