## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

ZEN-NOH GRAIN CORP.

and

BUNGE NORTH AMERICA, INC.,

*Defendants*.

Civil Action No.: 1:21-cv-01482 (RJL)

## <u>FINAL JUDGMENT</u>

WHEREAS, Plaintiff, United States of America, filed its Complaint on June 1, 2021;

AND WHEREAS, the United States and Defendants, Zen-Noh Grain Corp. and Bunge North America, Inc., by their respective attorneys, have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to make certain divestitures to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestitures and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final

1

Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" or "Acquirers" means Viserion or another entity or entities to which Defendants divest the Divestiture Assets.

B.      "ZGC" means Zen-Noh Grain Corp., a Louisiana corporation headquartered in Covington, Louisiana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates (including CGB), partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Bunge" means Bunge North America, Inc., a New York corporation headquartered in Chesterfield, Missouri, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Bunge Elevators" means the elevators located on the properties owned or leased by Bunge listed among the Divested Elevators.

E.      "CGB" means CGB Enterprises Inc., a Louisiana corporation headquartered in Covington, LA, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

2

F.      "CGB Elevator" means the elevator located on the property owned or leased by CGB listed among the Divested Elevators.

G.      "Viserion" means Viserion Grain, LLC and Viserion International Holdco, LLC, Delaware limited liability companies headquartered in Colorado, their successors and assigns, their subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures and their directors, officers, managers, agents, and employees.

H.      "Divested Elevators" means the following elevators:

| Geographic Area | Elevator(s) to Be Divested |
| --- | --- |
| McGregor, IA | The Bunge Elevator located at 311 E. B St., McGregor, IA 52157 |
| Albany, IL | The Bunge Elevator located at 1002 N. Main St., Albany, IL 61230 **OR** the CGB Elevator located at 561 Broderick Drive, Savanna, IL 61074 |
| Shawneetown, IL | The Bunge Elevator located at 218 Market St., Shawneetown, IL 62984 |
| Caruthersville, MO | The Bunge Elevator located at 100 Ward Ave, Caruthersville, MO 63830 |
| Huffman, AR | The Bunge Elevator located at 7058 E. County Rd. 54, Hwy. 37, Blytheville, AR 72315 |
| Osceola, MO | The Bunge Elevators located at 2220 E. State Hwy. 198 and Mississippi River, Osceola, AR 72370 and at Mississippi County 661 S, Monroe Township, AR 72370 |

| Helena, AR | The Bunge Elevator located at 103 Hanks Ln., Helena, AR 72342 |
| Lake Providence, LA | The Bunge Elevator located at 337 Port Rd., Lake Providence, LA 71254 |
| Lettsworth, LA | The Bunge Elevator located at 17783 Hwy. 418, Lettsworth, LA 70753 |

I.     "Divestiture Assets" means all of Defendants' rights, titles, and interests in and to:

1.     the Divested Elevators;

2.     all contracts, contractual rights, and relationships, including customer and supplier relationships, and all other agreements, commitments, and understandings, including, supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement that relate exclusively to the Divested Elevators; and

3.     all other property and assets, tangible and intangible, wherever located, relating to or used in connection with each Divested Elevator, including:

a.     all real property and real property rights, fee simple interests; buildings, facilities, and other structures, including bins, silos, other grain storage facilities, and dock facilities; easements; leasehold and rental rights, including all renewal or option rights; prepaid rent and security deposits; and fixtures, improvements, and assignable improvement warranties;

b.     all tangible personal property; equipment, machinery, and tools, such as those used for handling, receiving, unloading, weighing, sampling, grading, elevating, storing, drying, conditioning, loading, and buying and selling grain; vehicles and furniture; supplies, replacement parts, and spare parts; and

inventory;

       c.      all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations issued or granted by any governmental organization, and all pending applications or renewals;

       d.      all records and data, including (a) customer and supplier lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, (d) accounting and operating records and ledgers; (e) sales and marketing records, including local marketing plans and sales and advertising materials, (f) records and research data concerning historic and current research and development activities, and (g) drawings, blueprints, and designs; and

       e.      all other intangible property, including, (a) technical information, (b) design tools and simulation capabilities, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), and quality assurance and control procedures, provided, however, that any intellectual property associated with the brand names Bunge, CGB, Zen-Noh, and ZGC is not included in the Divestiture Assets.

     J.      "Divestiture Date" means the date[s] on which the Divestiture Assets are divested to Acquirer[s] pursuant to this Final Judgment.

K.      "Including" means including, but not limited to.

L.      "Relevant Personnel" means: (1) all full-time, part-time, or contract employees employed at the Divested Elevators at any time between August 21, 2020, and the Divestiture Date; (2) all elevator managers, grain merchandisers, and elevator superintendents employed by Bunge or CGB whose job responsibilities are shared between or among Divested Elevators and any non-divested elevators, at any time between August 21, 2020, and the Divestiture Date; and (3) all regional managers employed by Bunge one organizational level above the elevator manager level, wherever located, whose job responsibilities support the grain purchasing business of any of the Bunge Elevators, at any time between August 21, 2020, and the Divestiture Date. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Relevant Personnel.

M.      "Transaction" means ZGC's proposed acquisition of 35 operating and 13 idled grain elevators from Bunge.

## III. APPLICABILITY

A.      This Final Judgment applies to Defendants ZGC and Bunge, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.      If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from an Acquirer.

6

## IV.  DIVESTITURES

A.      Defendant ZGC is ordered and directed within 30 calendar days after entry of the Asset Preservation Stipulation and Order to divest the Divestiture Assets in a manner consistent with this Final Judgment to Viserion or to another Acquirer or Acquirers acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 90 calendar days in total and will notify the Court of any extensions.

B.      Defendant ZGC must use its best efforts to divest the Divestiture Assets as expeditiously as possible, and Defendants may not take any action to impede the permitting, licensing, operation, or divestiture of the Divestiture Assets. Defendants must take no action that would jeopardize the divestiture ordered by the Court.

C.      Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of grain purchasing, and that the divestiture to Acquirer or Acquirers will remedy the competitive harm alleged in the Complaint.

D.      The divestiture must be made to an Acquirer or Acquirers that, in the United States' sole judgment, has or have the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in grain purchasing.

E.      The divestiture must be accomplished in a manner that satisfies the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendant ZGC give Defendants the ability unreasonably to raise an Acquirer's costs, to lower an Acquirer's efficiency, or otherwise to interfere in the ability of an Acquirer to compete

effectively in grain purchasing.

F.      Divestiture of the Divestiture Assets may be made to one or more Acquirers, in one or more transactions, provided that it is demonstrated to the sole satisfaction of the United States that the criteria required by Paragraphs IV(C), IV(D), and IV(E) will still be met.

G.      In the event Defendant ZGC is attempting to divest the Divestiture Assets to an Acquirer other than Viserion, Defendant ZGC promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendant ZGC must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due-diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.

H.      Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, and other permitting documents and information regarding the Divestiture Assets; and (3) access to all financial, operational, or other documents and information relating to the Divestiture Assets that customarily would be provided as part of a due-diligence process. Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property.

I.      Defendants must cooperate with and assist an Acquirer in identifying and, at the

option of Acquirer, hiring all Relevant Personnel, including:

1.       Within 10 business days following the filing of the Complaint in this matter, or, if the Divestiture Assets are divested to an Acquirer or Acquirers other than Viserion, within 10 business days of notice from the United States pursuant to Paragraph VI.C. that it does not object to a proposed Acquirer, Defendants must identify all Relevant Personnel to Acquirer and the United States, including by providing organization charts covering all Relevant Personnel.

2.       Within 10 business days following receipt of a request by an Acquirer or the United States, Defendants must provide to Acquirer and the United States additional information related to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job performance evaluations. Defendants must also provide to Acquirer and the United States current and accrued compensation and benefits, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, any retention agreement or incentives, and any other payments due, compensation or benefited accrued, or promises made to the Relevant Personnel. If Defendants are barred by any applicable law from providing any of this information, Defendants must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

3.       At the request of an Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

4.      Defendants must not interfere with any effort by an Acquirer to employ any Relevant Personnel. Interference includes, but is not limited to, offering to increase the compensation or improve the benefits of Relevant Personnel unless: (a) the offer is part of a company-wide increase in compensation or improvement in benefits that was announced prior to April 21, 2020, or (b) the offer is approved by the United States in its sole discretion. Defendants' obligations under this Paragraph will expire 6 months after the Divestiture Date.

5.      For Relevant Personnel who elect employment with an Acquirer within 6 months of the Divestiture Date, Defendants must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights (or to the extent such accelerated vesting is not permitted, provide the equivalent benefits), provide any pay pro-rata, provide all other compensation and benefits that their Relevant Personnel have fully or partially accrued, and provide pro-rata all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including any vested retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.      For a period of 12 months from the Divestiture Date, Defendants may not solicit to rehire the following categories of Relevant Personnel hired by an Acquirer from Defendants within 6 months of the Divestiture Date: regional and general managers, elevator managers, grain merchandisers, elevator superintendents, and bookkeepers. Defendants may solicit to rehire these categories of Relevant Personnel if (a) an individual is terminated or laid off by Acquirer, or (b) Acquirer agrees in writing that Defendants may solicit to rehire that

individual. Nothing in this Paragraph IV.H.6. prohibits Defendants from advertising employment openings using general solicitations or advertisements and rehiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

J.      Defendant ZGC must warrant to Acquirer or Acquirers that (1) the Divestiture Assets will be operational and without material defects on the date of their transfer to Acquirer; (2) there are no material defects in the environmental, zoning, or other permits relating to the operation of the Divestiture Assets; and (3) Defendant ZGC has disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

K.      For any contract or agreement that requires the consent of another party to assign, subcontract, or otherwise transfer, Defendants must use best efforts to accomplish the assignment, subcontracting, or transfer. Defendants must not interfere with any negotiations between an Acquirer and a contracting party.

L.      Defendants must make best efforts to assist Acquirer or Acquirers to obtain all necessary licenses, registrations, certifications, and permits to operate the Divestiture Assets, including those issued by governmental entities. Until an Acquirer obtains the necessary licenses, registrations, certifications, and permits, Defendants must provide Acquirer with the benefit of Defendants' licenses, registrations, certifications, and permits to the full extent permissible by law.

M.      At the option of Acquirer or Acquirers, and subject to approval by the United States in its sole discretion, on or before the Divestiture Date, Defendants must enter into contracts to provide transition services for back office, human resources, and information

technology, for a period of up to six months after the divestiture occurs on terms and conditions reasonably related to market conditions for the provision of the transition services. Any amendments to or modifications of any provision of any contract between either or both Defendants, and Acquirer or Acquirers, to provide transition services are subject to approval by the United States, in its sole discretion. The United States, in its sole discretion, may approve one or more extensions of any contract for transition services between Defendants and Viserion, for a total of up to an additional six months. In the event the Divestiture Assets are divested to an Acquirer or Acquirers other than Viserion, the United States, in its sole discretion, may approve an extension of any contract for transition services for up to 12 months after the divestiture is completed. If an Acquirer seeks an extension of the term of any contract for transition services, the relevant Defendant must notify the United States in writing at least two months prior to the date the contract expires. An Acquirer may terminate a contract for transition services, or any portion of a contract for transition services, without cost or penalty at any time upon 30 days' written notice. The employee(s) of Defendants tasked with providing transition services must not share any competitively sensitive information of an Acquirer with any other employee of Defendants.

N.      If any term of an agreement between Defendants and Acquirer or Acquirers, including an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.  APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If Defendant ZGC has not divested the Divestiture Assets within the period specified in Paragraph IV.A., Defendant ZGC must immediately notify the United States of that

fact in writing.  Upon application of the United States, which Defendants may not oppose, the Court will appoint a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.     After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell the Divestiture Assets.  The divestiture trustee will have the power and authority to accomplish the divestiture to an Acquirer or Acquirer(s) acceptable to the United States, in its sole discretion, at a price and on terms obtainable through reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate.  The divestiture trustee will have sole discretion to select the Divested Elevator to be divested in each geographic area listed in Paragraph II.H.  The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.     Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee.  Objections by Defendants must be conveyed in writing to the United States and the divestiture trustee within 10 calendar days after the divestiture trustee has provided the notice of proposed divestiture required by Section VI.

D.     The divestiture trustee will serve at the cost and expense of Defendant ZGC pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, that are approved by the United States in its sole discretion.

E.     The divestiture trustee may hire at the cost and expense of Defendant ZGC any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties.  These agents or consultants will be accountable solely to the

13

divestiture trustee and will serve on terms and conditions, including terms and conditions governing confidentiality requirements and conflict-of-interest certifications, that are approved by the United States in its sole discretion.

      F.     The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendant ZGC are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendant ZGC and the United States.

      G.     The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the Divestiture Date, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendant ZGC and the trust will then be terminated.

      H.     Defendants must use their best efforts to assist the divestiture trustee to accomplish the required divestiture. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the

14

divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture.

I.      The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with the United States setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact with any such person.

J.      If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within six months of appointment, the divestiture trustee must promptly provide the United States with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestitures have not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestitures. Following receipt of that report, the United States may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment.

K.      The divestiture trustee will serve until divestiture of all Divestiture Assets is completed or for a term otherwise ordered by the Court.

L.      If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI. NOTICE OF PROPOSED DIVESTITURE

A.      Within two business days following execution of a definitive agreement to divest the Divestiture Assets to an Acquirer or Acquirers other than Viserion, Defendant ZGC or the divestiture trustee, whichever is then responsible for effecting the divestiture, must notify the United States of the proposed divestiture.  If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendant ZGC.  The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B.      Within 15 calendar days of receipt by the United States of receipt of the notice required by Paragraph IV.A., the United States may request from Defendants, the proposed Acquirer, other third parties, or the divestiture trustee additional information concerning the proposed divestiture, the proposed Acquirer, and other prospective Acquirers.  Defendants and the divestiture trustee must furnish the additional information requested within 15 calendar days of the receipt of the request unless the United States provides written agreement to a different period.

C.      Within 45 calendar days after receipt of the notice required by Paragraph VI.A. or within 20 calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B., whichever is later, the United States will provide written notice to Defendant ZGC and any divestiture trustee that states whether or not the United States,

in its sole discretion, objects to an Acquirer or Acquirers or any other aspect of the proposed divestitures.  Without written notice that the United States does not object, a divestiture may not be consummated.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C. of this Final Judgment.  Upon objection by Defendants pursuant to Paragraph V.C., a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

  D. No information or documents obtained pursuant to this Section VI may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

  E. In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the United States Department of Justice's Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7.  Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

  F. If at the time that a person furnishes information or documents to the United States pursuant to this Section VI, that person represents and identifies in writing information or

17

documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## VII.  FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets.

## VIII.  ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court.

## IX. AFFIDAVITS

A.      Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestitures required by this Final Judgment have been completed, each Defendant must deliver to the United States an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel, describing in reasonable detail the fact and manner of Defendants' compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits. Defendant Bunge's obligations under this Paragraph IX.A shall cease 30 calendar days after the closing of the Transaction.

B.      Each affidavit required by Paragraph IX.A. must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was

contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the United States to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit, except that the United States may object at any time if the information set forth in the affidavit is not true or complete.

C.     Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.

D.     Within 20 calendar days of the filing of the Complaint in this matter, each Defendant must also deliver to the United States an affidavit signed by each Defendant's Chief Financial Officer and General Counsel, describing in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

E.     If a Defendant makes any changes to the actions and steps outlined in any earlier affidavits provided pursuant to Paragraph IX.D., Defendants must, within 15 calendar days after any change is implemented, deliver to the United States an affidavit describing those changes.

F.     Defendants must keep all records of any efforts made to comply with Section VIII until one year after the Divestiture Date.

## X. COMPLIANCE INSPECTION

A.     For the purpose of determining or securing compliance with this Final Judgment,

or related orders such as the Hold Separate Stipulation and Order, or for the purpose of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

        1.    to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

        2.    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in the Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

        B.    Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

        C.    No information or documents obtained pursuant to this Section XI may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." See 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States pursuant to this Section X, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendants 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XI.  NOTIFICATION

A.      Unless a transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendant ZGC, may not, without first providing at least 30 calendar days advance notification to the United States, directly or indirectly acquire any assets of or any interest, including a financial, security, loan, equity, or management interest, in grain purchasing facilities, including grain elevators and crush mills, located within a 100-mile radius any Divested Elevator during the term of this Final Judgment; *provided, however*, that the

obligations in this Section XI do not apply to Defendant ZGC's acquisition of grain purchasing facilities that were leased by Defendant ZGC as of January 1, 2021.

B.      Defendant ZGC must provide the notification required by this Section XI in the same format as, and in accordance with the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 8 of the instructions must be provided only about grain purchasing facilities located within a 100-mile radius of any Divested Elevator.

C.      Notification must be provided at least 30 calendar days before acquiring any assets or interest, and must include, beyond the information required by the instructions, the names of the principal representatives who negotiated the transaction on behalf of each party, and all management or strategic plans relating to the proposed transaction. If, within the 30 calendar days following notification, representatives of the United States make a written request for additional information, Defendant ZGC may not consummate the proposed transaction until 30 calendar days after submitting all requested information.

D.      Early termination of the waiting periods set forth in this Section XI may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section XI must be broadly construed, and any ambiguity or uncertainty regarding whether to file a notice under this Section XI must be resolved in favor of filing notice.

## XII.  LIMITATIONS ON REACQUISITION

Defendant ZGC may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without prior authorization by the United States.

### XIII.  RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIV.  ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension

of this Final Judgment, together with other relief that may be appropriate.  In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce the Final Judgment, including in the investigation of the potential violation.

D.      For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV.  EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures have been completed and continuation of this Final Judgment no longer is necessary or in the public interest.

## XVI.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States.  Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

_____
Hon. Richard J. Leon
United States District Judge